PHILIPP, as Personal Representative of the Estate of Robert L. Philipp, deceased, and others, Plaintiffs-Respondents, v. MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellant.

*No. 75–621. Argued February 7, 1978.—Decided April 5, 1978.*
(Also reported in 264 N. W. 2d 271.)

For the appellant there was a brief by *H. R. Klueter* and *Terwilliger, Wakeen, Piehler, Conway & Klingberg, S. C.* and oral argument by *Mr. Klueter,* all of Wausau.

For the respondents there was a brief and oral argument by *Jerome A. Maeder, S. C.* of Wausau.

DAY, J. This is an appeal from a judgment requiring the defendant-appellant, Minnesota Mutual Life Insurance Company (hereafter insurance company) to pay the plaintiffs-respondents, Shirley Philipp, the personal representative of the estate of Robert L. Philipp, the insured deceased, and Intercity State Bank (hereafter personal representative or bank) $27,268.79 plus interest and costs.

This amount is claimed by the bank to be due to it under a credit-life insurance policy issued to the bank by the insurance company on the life of the deceased, Robert L. Philipp. The insurance company contends that it should not be required to pay the amount due under the policy because of what it claims to be false representations made on the application for the insurance which was signed by Mr. Philipp.

The trial court found that the application was not admissible into evidence because the insurance company

had not complied with the statutory requirement to furnish a copy of the application to Mr. Philipp or his beneficiary.

The issue on this appeal is whether under the policy issued in this case, the bank is a "beneficiary" within the meaning of sec. 206.61(3), Stats. (1973)?

On June 1, 1972, the insurance company issued a group credit-life insurance policy to the bank. The policy provided that in exchange for premiums the insurance company would insure the lives of persons indebted to the bank for mortgage loans. The policy also provided that upon proof of death of an insured debtor, the insurance company would pay the amount of the insurance in force on such debtor to the bank and that the money would be applied to paying off the debt.

The bank, through its employees, did the actual writing of the individual insurance policies and the trial court found that the bank acted as an agent for the insurance company and received a commission or service fee from the insurance company for performing functions related to the insurance program. An employee of the bank referred to the commission as a "twenty precent administrative fee."

On November 1, 1972, the deceased applied to the insurance company for group credit-life insurance covering the balance on his mortgage to the bank. The bank employee who processed the application was likewise deceased at the time of trial. The application contained the following questions with boxes provided to check "yes" or "no":

"1. During the last three (3) years, have you been hospitalized or have you consulted a physician for any reason?

"2. Have you ever been treated for or advised that you have had any of the following: heart, lung, nervous or kidney disorder, high blood pressure, cancer or tumor, diabetes?"

Both boxes were checked "no" and the application was signed by the deceased.

A copy of the application was retained by the bank, but it is stipulated that neither Mr. Philipp, nor his wife nor any of his heirs received a copy of the application.

The trial court found that the responses on the application were untrue. The deceased had consulted Dr. Robert Cadwell between February 1, 1972 and April 12, 1972 and was told by the doctor that he was suffering from either high blood pressure or hypertension. The doctor was not certain which term he had used.

The insurance company does not contend that the responses to the application were made with an intent to deceive but it does contend that the responses increased the risk as that term is used in sec. 209.06, Stats. (1973), cited below. An employee of the insurance company testified that the deceased would not have been a suitable risk for a group life policy if the insurance company had been aware of his high blood pressure. Mr. Philipp died on February 17, 1973. The trial court found that high blood pressure did not lead to, nor was it causally connected with Mr. Philipp's death. The trial court found that the deceased died from an embolism unrelated to high blood pressure and that the embolism referred to was a pulmonary emboli, a blood clot that dislodged, went to the lung and obstructed the pulmonary arteries.

The trial court refused to allow the insurance application into evidence because it reasoned that furnishing the application to the bank only, did not fulfill the requirements of sec. 206.61(3), Stats. (1973).

The estate of Mr. Philipp would be primarily responsible for the indebtedness to the bank if the insurance company is relieved from liability.

The pertinent sections of the 1973 statutes applicable to this case are as follows:

"206.60. *Group life insurance, definitions, requirements.* No policy of Group Life Insurance shall be delivered in this state unless it conforms to one of the following descriptions:

". . . (2) a policy issued to a creditor who shall be deemed the policyholder, to insure debtors of the creditor, subject to the following requirements:

". . . (e) The insurance shall be payable to the policyholder. Such payment shall reduce or extinguish the unpaid indebtedness of the debtor to the extent of such payment."[1]

"206.01 *Life insurance; definitions.* In any statute relating to life insurance, unless the context indicates otherwise, the following words and phrases shall be understood in the sense herein set forth and defined.

". . . (2) 'Beneficiary,' is the person in whose favor a policy is written."

"Sec. 206.61(3) which is applicable in Group Life Insurance Policies provides as follows:

". . . (3) . . . and that no statement made by any person insured shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such person or to his beneficiary."[2]

"209.06 *Insurance; application; effect.* (1) no oral or written statement, representation or warrantee made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or void the policy, unless such statement, representation or warrantee was false and made with intent to deceive, or unless the matter misrepresented or made a warrantee increased the risk or contributed to the loss."[3]

---

[1] Sec. 206.60(2)(e), Stats. 1973 has been repealed by L. 1975, c. 371 §17 eff. June 17, 1976 and L. 1975, c. 375 §24 eff. June 22, 1976.

[2] Sec. 206.61(3), Stats. (1973), has been repealed by L. 1975, c. 375 §24 eff. June 22, 1976. Other requirements for providing written applications now appear at sec. 631.11(1)(a), (b) & (c), Stats. (1975).

[3] Sec. 209.06, Stats. (1973) has been repealed by L. 1975, c. 375 §27 eff. June 22, 1976. As modified, it appears in sec. 631.11(2) & (3), Stats. (1975).

■

The insurance company argues that the bank was a "beneficiary" to whom a copy of the application had been furnished. Sec. 206.01(2) defines beneficiary ". . . is the person in whose favor a policy is written." The company relies on sec. 206.60(2) (e), Stats. providing that, ". . . The insurance shall be payable to the policyholder. Such payment shall reduce or extinguish the unpaid indebtedness of the debtor to the extent of such payment." The insurance company claims that because the bank is named in the policy as the "policyholder" it must also be construed to be the "beneficiary" as that term is used in sec. 206.61(3), Stats. (1973).

We conclude that the bank was not a "beneficiary" by the terms of its own policy, and that furnishing a copy of the application to the bank was not sufficient to comply with sec. 206.61(3), Stats.

■

The word "beneficiary" is used in the policy itself only in the situation where: "If the insurance of an insured debtor has been terminated[4] for any cause except nonpayment of his contribution toward premiums, he shall be entitled to exchange the amount of insurance so terminated, without evidence of insurability, to insurance under an individual term policy, . . . The insured shall be entitled to elect the *beneficiary* under the individual term policy and to change the *beneficiary* from time to time. If at the death of the insured no *beneficiary* has been elected, or if a named *beneficiary* is not living, the proceeds of the policy shall be paid to the administrators or the executors of the insured's estate . . ." (emphasis supplied).

---

[4] Termination under the policy comes about when (1) the loan is paid in full; (2) the insured debtor voluntarily transfers all of his interest in the loan security; (3) period of redemption expires under foreclosure; (4) specified circumstances in refinancing.

This same information in almost identical language is contained in the "Certificate of Participation" which by the terms of the policy is to be furnished to the insured.

No-where in the policy or in the Certificate of Participation is the bank referred to as the "beneficiary." The bank is referred to throughout the policy as the "policyholder."

Sec. 206.61(3), Stats. provides that for a copy of the insurance application to be admissible as evidence in a contest over the validity of the insurance, it must be given to the insured "or to his beneficiary." Thus if the policy is made an individual term policy, a copy of the application, if it has not been furnished to the insured, could be furnished to the named beneficiary. If the beneficiary was changed, a copy could be furnished to the new beneficiary, if not furnished to the insured. If no beneficiary was named it could not be furnished to the executor or administrator because none would be appointed during the insured's lifetime. The only person that a copy of the application could be furnished to would be the insured until such time as the insured might obtain an individual policy under the circumstances described above.

The bank was the agent of the insurance company. Providing the bank with a copy of the application does not meet the statutory mandate because the bank is specifically referred to as the policyholder, not as a beneficiary.

In this case the real beneficiary is the insured's estate. But there is no way to provide the personal representative with a copy of the application prior to the insured's death. At the time of the application there was no personal representative in existence. It follows that if the insurance company wishes to have an application for

insurance made admissible under the statute, in order to contest the validity of the policy, it must have furnished such application to the insured.

Because of our holding as to the admissibility of the application, we do not reach the other questions raised by the parties.

*By the Court.*—Judgment affirmed.